UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| QUINTAIROS, PRIETO, WOOD AND BOYER, P.A., <br><br> Plaintiff, <br><br> V. <br><br> PCPMG CONSULTING, LLC, <br><br> Defendant. | CIVIL ACTION NO. 5:18-176-KKC <br><br><br> <u>OPINION & ORDER</u> |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on Plaintiff's motion (DE 83) for leave to file a First Amended Complaint, and Robert J. Riek's motion (DE 89) to intervene. Both motions having been fully briefed, the matters are now ripe for the Court's review. For the reasons set forth herein, Plaintiff's motion (DE 83) is DENIED and Riek's motion (DE 89) is DENIED AS MOOT.

## I. BACKGROUND

Plaintiff Quintairos, Prieto, Wood and Boyer, P.A. ("QPWB") originally brought this action against Defendant PCPMG Consulting ("MCON") in Madison Circuit Court in February 2018, alleging several breach of contract theories, unjust enrichment, fraud, and dishonored checks. (DE 1-1.) The action was removed to this Court in March 2018. (DE 1.) Shortly thereafter, the parties submitted an agreed stipulation (DE 5) to stay all proceedings in response to a letter by Preferred Care Partners Management Group, L.P. ("PCPMG") and Kentucky Partners Management, LLC ("KPM"), Debtors who believed that the claims asserted in this action were property of the Debtor's bankruptcy estates. Almost two weeks later, QPWB filed a motion to remand (DE 8), and a month after that, MCON

1

filed a motion to transfer venue to the Northern District of Texas (DE 20), where the Debtors' bankruptcy case was proceeding. PCPMG then sought to intervene in this action. (DE 24.)

In mid-May 2018, two weeks after PCPMG's motion to intervene in this action, PCPMG initiated an action against QPWB in the Northern District of Texas bankruptcy court for violation of the stay issued in the bankruptcy proceedings. (DE 83 at 2–3.) After an order by the bankruptcy court in December 2018 granting in part and denying in part QPWB's motion to dismiss the action against it in that court, PCPMG withdrew its pending motion to intervene in this action, MCON withdrew its pending motion to transfer venue, and this Court denied QPWB's motion to remand and stayed this action pending resolution of the bankruptcy case because the bankruptcy case could have affected QPWB's ability to prosecute this action. (DE 39.)

In July 2019, upon agreement of the parties, the Court lifted the stay. (DE 44.) In May 2020, the Court entered a Scheduling Order, setting a deadline of December 1, 2020 by which to file any motions to join additional parties or amend pleadings and a trial date of October 4, 2021. (DE 51.) In September 2020, QPWB filed a motion for judgment on the pleadings. (DE 57.) Upon motion by MCON, the Court extended the deadlines for fact discovery, expert discovery, Rule 26(a)(2) reports, and dispositive motions by six months and continued the jury trial generally. (DE 63.) In August 2021, the Court denied QPWB's motion for judgment on the pleadings, noting that the discovery deadline in the Court's Amended Scheduling Order was September 30, 2021 and that the issues presented would best be resolved on summary judgment after the close of discovery. (DE 67.) The Court scheduled a case management conference but canceled the conference when the parties advised the Court that they had scheduled a settlement conference with the magistrate judge. (DE 68.) On the eve of the settlement conference, the parties conferred and realized

that the settlement conference would not be fruitful given the state of MCON's business operations. QPWB filed a motion for a temporary restraining order to enjoin MCON from dissipating its assets, which the Court granted. (DE 73.) The parties then tendered an agreed order (DE 75) prohibiting dissipation of MCON's assets, which the Court entered on December 14, 2021. (DE 76.)

A little over a month later, QPWB filed the pending motion (DE 83) for leave to file a First Amended Complaint. MCON responded (DE 88), and QPWB replied. (DE 93.) At the same time, Robert J. Riek, general counsel for a group of single purpose limited partnerships (the "Preferred Care" group of companies) with which MCON and its predecessors and affiliates have contracted, moved to intervene for the limited purpose of opposing QPWB's motion. (DE 89.) QPWB responded to Riek's motion (DE 94), and Riek replied. (DE 101.) Both matters are now ripe for the Court's review.

## II. MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT

Both parties agree that QPWB's motion implicates Rules 15 and 16 of the Federal Rules of Civil Procedure because QPWB is seeking leave to amend its complaint after the deadline to amend pleadings. (DEs 83 at 7, 88 at 3.) The Court will first conduct an analysis under Rule 16. *See Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."); *see also Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 Fed. App'x 364, 367 (6th Cir. 2016) ("[N]otwithstanding Rule 15's directive freely to give leave to amend, a party seeking leave to amend after the scheduling order's deadline must meet Rule 16's good-cause standard in order for the district court to amend the scheduling order.").

**A. Rule 16**

The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the scheduling order's requirements, but courts also consider possible prejudice to the party opposing the modification. *Garza v. Lansing Sch. Dist.*, 972 F.3d 853, 879 (6th Cir. 2020) (citing *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002)).

### 1. Diligence

Under the "diligence" prong of Rule 16(b)'s "good cause" standard, a court choosing to modify a scheduling order may do so only if the scheduling order "cannot reasonably be met despite the diligence of the party seeking the extension." *Leary*, 349 F.3d at 906. Thus, the Court must determine whether QPWB could reasonably have filed an amended complaint containing the proposed additions prior to the December 1, 2020 deadline.

QPWB's first amended complaint would add six individual defendants: Travis "Gene" Lunceford, Gary Anderson, and Melinda Provence, who were owners and officers of PCPMG and, subsequently, owners of MCON; Michael Gavin, who served as the CEO of PCPMG and, subsequently, as CEO of MCON; Robert J. Riek, who served as the general counsel for the Preferred Care group of companies; and Thomas Scott, the sole director and shareholder of Preferred Care, Inc., which owned each nursing home managed by PCPMG and, subsequently, by MCON. (DE 83-1 at 3.) Four of these individuals (Lunceford, Gavin, Riek, and Scott) were mentioned in QPWB's original complaint in February 2018, although they were not named as parties. (DE 1-1.) QPWB's first amended complaint would also add: (1) a claim for "fraud by omission" against MCON and the six new defendants based on the same actions described in the original complaint; (2) a claim for "civil conspiracy" against MCON and the six new defendants based on the same actions described in the

4

original complaint; and (3) a claim for "alter ego liability" to extend any liability by MCON to each of the six new defendants.

QPWB argues that good cause exists to amend the scheduling order to allow filing of its amended complaint because "despite having been filed in 2018, this case remains at a relatively early stage." (DE 83 at 8.) QPWB further argues that it was not fully aware of the nature of MCON's structure and operations until the failed settlement conference in November 2021, when it "began investigating the pattern of conduct delineated in the amended complaint." (DE 83 at 11.) It was then that QPWB obtained sworn testimony from the Texas bankruptcy proceedings "which illuminated the nature of MCON's structure and operations." (DE 83 at 11.)

However, QPWB appeared be very familiar with the structure of the Preferred Care entities, the corporate reorganization that occurred, and the individuals involved when they filed their motion for judgment on the pleadings in September 2020, several months before the deadline to amend pleadings. (DEs 57-1 at 4–17.) In QPWB's own words: "Since 2012, QPWB has zealously represented and provided legal services to the Preferred Care group of companies in over 125 lawsuits around the country, including in Arizona, Florida, New Mexico, and Kentucky." (DE 83-1 at 5 ¶ 29.) QPWB was also identified as an unsecured creditor in the Preferred Care, Inc. bankruptcy proceedings—and thus received notice of relevant filings (DE 88-5 at 3)—which explored over 2017 and 2018 the structure of the relevant entities (DE 88-2 at 4–13, 18–23), and the sale of the Kentucky facilities. (DE 88-4 at 7–11.) Moreover, the structures of the various relevant entities and the roles of Lunceford, Anderson, Provence, and Scott within them were explored in the PCPMG and KPM bankruptcy proceedings at least as early as November 2017, according to a document (DE 57-2 at 29–43) referenced by QPWB in their September 2020 motion for judgment on the pleadings—a motion which also discusses the roles and actions of Gavin and Riek. (DE

5

57-1 at 14.)  QPWB even filed a limited statement in the PCPMG and KPM bankruptcy proceedings in May 2019, in which they discussed the implications of certain entities selling, transferring, or winding down business operations.  (DE 88-8.)

A complaint must state a claim that is plausible on its face, meaning the court could draw the reasonable inference that the defendant is liable for the misconduct alleged. *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). It is the Court's conclusion that QPWB could have plausibly included the claims they now seek to add, and named as defendants the individuals they now identify, prior to the Court's December 1, 2020 deadline to join additional parties or amend pleadings. Thus, the Plaintiffs have not demonstrated diligence such that the scheduling order's deadline could not reasonably have been met.

## 2. Prejudice

The Court will also consider the possible prejudice to the Defendant of modifying the scheduling order to allow the filing of an amended complaint at this point.

"The Sixth Circuit has specifically held that allowing amendments to a complaint after the close of discovery imposes prejudice on the non-moving party." *Bustetter v. CEVA Logistics U.S.*, No. 18-58-DLB-EBA, 2019 WL 1867430, at *3 (E.D. Ky. Apr. 25, 2019) (citing *Pittman v. Experian Info. Sols., Inc.*, 901 F.3d 619, 641 (6th Cir. 2018) (collecting cases)). In *Pittman*, the parties had already briefed dispositive motions—which is not the case here—but, in *Garza v. Lansing School District*, the Sixth Circuit found prejudice when a motion for leave to amend was filed nine months after the scheduling order's deadline to join parties or amend the pleadings. *See Garza*, 972 F.3d at 879–880. The Court in *Garza* cited as prejudicial the possibility of new depositions of individuals who had already been deposed, additional discovery, and additional delays for attorney preparation. *Id.* at 880.

6

The same considerations apply here, where the motion for leave to amend was filed more than thirteen months after the scheduling order's deadline. Allowing QPWB to file an amended complaint at this point would lead not only to potentially significant additional discovery, but also to extensive further legal briefing as a result of the newly named Defendants. Thus, it is likely that granting QPWB's motion for leave to amend would substantially delay the proceedings in this case and prejudice all involved.

Accordingly, QPWB has failed to demonstrate good cause under Rule 16(b) to modify the scheduling order's deadline to join parties or amend the pleadings.

**B. Rule 15**

Typically, to determine whether to grant leave to amend a pleading, the Court relies on six factors, known as the "*Foman* factors" from *Foman v. Davis*, 371 U.S. 178, 182 (1962): (1) "undue delay in filing," (2) "lack of notice to the opposing party," (3) "bad faith by the moving party," (4) "repeated failure to cure deficiencies by previous amendments," (5) "undue prejudice to the opposing party," and (6) "futility of [the] amendment." *Wade v. Knoxville Utils. Bd.*, 259 F.3d 452, 458–59 (6th Cir. 2001) (quotation omitted).

However, "Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary*, 349 F.3d at 909; *see also Carrizo (Utica) LLC v. City of Girard, Ohio*, 661 Fed. App'x 364, 367 (6th Cir. 2016) ("[N]otwithstanding Rule 15's directive freely to give leave to amend, a party seeking leave to amend after the scheduling order's deadline must meet Rule 16's good-cause standard in order for the district court to amend the scheduling order."). Because QPWB did not meet Rule 16's "good cause" standard, the Court need not conduct a Rule 15 analysis.

7

## III. MOTION TO INTERVENE

Robert J. Riek moves to intervene in this action "for the limited purpose of challenging Plaintiff's Motion for Leave to File First Amended Complaint." (DE 89-1 at 15.) Because the Court determined that QPWB did not demonstrate good cause under Rule 16(b) to modify the scheduling order's deadline to join parties or amend the pleadings, Mr. Riek's motion to intervene is moot.

## IV. CONCLUSION

For the reasons set forth herein, IT IS HEREBY ORDERED:

(1) Plaintiff QPWB's motion for leave to file a first amended complaint (DE 83) is DENIED; and

(2) Robert J. Riek's motion to intervene (DE 89) is DENIED AS MOOT.

This 25th day of May, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY